See also *Hauptman* v. *United States*, 13 Ct. Cust. Appls. 295, T. D. 41218 and *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220.

UNITED STATES *v.* H. V. ALBRECHT, ALBRECHT IMPORT CO., INC., AND STANLEY JORDAN & CO. (No. 4219)[1]

---

[1] C. A. D. 71.

United States Court of Customs and Patent Appeals, October 30, 1939

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for appellant.

*Barnes, Richardson & Colburn* (*Samuel M. Richardson*, of counsel) for appellee.

[Oral argument October 5, 1939, by Mr. FitzGibbon and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Under the Tariff Act of 1930, and during the period ranging from 1931 to 1935, inclusive, the appellees imported from Japan into the port of New York certain merchandise invoiced as "filtering paper," "filtering paper circles," and "bibulous paper circles." The merchandise was entered as filtering paper under paragraph 1409 of said tariff act.

The appellees made five entries which are involved here. The merchandise covered by two of the entries, which were made in the years 1931 and 1932, respectively, was classified by the Collector of Customs for duty under paragraph 1413, Tariff Act of 1930, at 30 per centum ad valorem as "Papers * * * cut * * * into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms." In the remaining three entries, made in the year 1935, the merchandise was classified for duty under paragraph 1404 of said act, which provides for "tissue paper" and contains a proviso that articles made of any of the papers provided for should not be "subject to a less *rate of duty* than that imposed upon the component paper of chief value of which such article is made." [Italics ours.] It is asserted by the Government and undisputed here that the goods covered by the three last protests were assessed under paragraph 1404 instead of under paragraph 1413, as were the goods covered by the other two protests, by reason of the fact that the decreased value of the paper imported in 1935 over that previously imported (which might have been brought about by different exchange rates) would result in a greater amount of duty if the merchandise were classified under paragraph 1404 rather than under paragraph 1413.

The importers protested the said classification and assessment of duty by the collector and claimed that the merchandise was dutiable as filtering paper at 5 cents per pound and 15 per centum ad valorem under paragraph 1409 of said act and relies solely upon that claim in this court.

The trial court sustained the protests and the Government has appealed here.

The pertinent portions of the statute involved follows:

Par. 1413. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for; * * * 30 per centum ad valorem; * * *

Par. 1404. Papers commonly or commercially known as tissue paper, * * * and all paper similar to any of the foregoing, not specially provided for, * * * weighing not over six pounds to the ream, and whether in sheets or any other form, 6 cents per pound and 20 per centum ad valorem; * * * *Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made: * * *

Par. 1409. * * * filtering paper, 5 cents per pound and 15 per centum ad valorem; * * *.

The merchandise involved is represented by Exhibits 1 to 28, inclusive, which consist of disks cut from very thin, white, almost transparent, paper. The disks range in diameter from 2¼ to 14 inches.

The importers introduced the testimony of three witnesses and the Government that of four.

The importers contend that through the testimony of the witnesses they have proved that the merchandise at bar is now and has been for the last 20 years chiefly used for filtering coffee in coffee tricolators and that it is not and has not been used for any other purpose. The Government claims that the importers introduced no proof whatever that merchandise like that at bar, on the date of the passage of said tariff act, was chiefly used as filtering paper, and further asserts that by Government witnesses it has definitely proved that such merchandise on the date of the passage of the tariff act was not chiefly used for filtering purposes.

The importers have pointed out the obviously unique classification of the collector where the so-called filtering disks covered by two of the protests were classified as papers cut to form under paragraph 1413 and identical merchandise coming in at a later period was classified as articles made of tissue paper under paragraph 1404. It was suggested that there was no justification for giving controlling effect in classification to such a change of value.

The Government contends that the imported merchandise is properly described and dutiable under paragraph 1413 as papers cut into shapes, etc., but that it is also tissue paper and therefore described in paragraph 1404 and that the mandatory provision concerning articles made of tissue paper requires that the goods covered by the entries made in 1935 should be classified under said paragraph 1404.

It is noted, however, that while the Government claims that the merchandise consists of articles made of tissue paper, it has never urged that if the disks are cut from filtering paper the imported merchandise would not be filtering paper but articles cut from filtering paper.

As the issue is presented to us we do not feel called upon to pass upon the correctness of the collector's classification. The sole question, as we see it, is whether or not the proof in the record establishes that prior to and on the date of the passage of the tariff act in question, merchandise of the class to which the imported merchandise belongs was chiefly used for filtering purposes. *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706; *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. (Customs) 464, T. D. 48913.

In this court appellees in their brief state:

The cutting or stamping of the imported paper into the form of disks does not create a new or different article nor does it remove the paper from the category of filtering paper. * * *

No issue has been tendered on this question and we will proceed to decide the issue upon appellees' theory that no new article has emanated by a manufacturing process from the paper from which the disks were cut. Obviously, if no new article has resulted, the paper from which the disks were cut must necessarily have been filtering paper if the articles of the present importation are filtering paper. Therefore, in considering whether the importations should be regarded as filtering paper, it is necessary that proof as to chief use must cover not only the article imported but also the paper from which it was cut.

It is obvious from the record that the importers never attempted to prove that merchandise of the class to which the imported merchandise belongs was chiefly used for filtering purposes prior to and on the date of the passage of the tariff act, although appellees very earnestly contend in argument in this court that "All the evidence shows that this merchandise is and always has been used exclusively for filtering purposes."

The trial court made no finding as to the use of merchandise of the class to which the imported merchandise belongs prior to and on the date of the passage of the tariff act, nor did it make any finding as to the use of the so-called filtering disks prior to or on the date of the passage of the act. The issue was stated by the trial court as follows:

* * * the real issue involved herein * * * is simply whether the disks of paper as imported are chiefly used for filtering purposes so as to come within the specific *eo nomine* provision for filtering paper in said paragraph 1409. * * *

And again it was said in the decision of the court below:

As the relevant facts in the present case are the same as those in the case cited, *supra* [*Crest Corporation* v. *United States*, T. D. 48888 (71 Treas. Dec. 535)],

namely, that the disks of paper as imported are solely or chiefly used for filtering coffee, we follow the same ruling [etc.].

We have examined the record carefully and find no evidence whatever introduced by the importers tending to establish that merchandise of the class to which the imported articles belong was chiefly used for filtering purposes prior to and on the date of the passage of the tariff act.

The record shows that the involved thin paper disks are cut by hand from hand-made paper in Japan; that the uncut paper, or paper similar to, or possibly identical with, that from which the instant disks are cut is exported to this country and here cut into disks.

If appellees' contention that the importations are, as imported, paper and not articles made from paper be correct, it must follow that the paper from which the disks are cut must be taken into consideration in determining the chief use issue at bar. Not one scintilla of evidence was introduced by the importers which went to the use of anything except the imported disks, which unquestionably are dedicated to the single use of filtering coffee. In this view, it is beside the point for the importers to contend that they have established that merchandise like that at bar in disk form during the last 20 years has been used for the sole purpose of filtering.

The Government introduced testimony to the effect that sheets of paper of the same character as those from which the disks were cut were imported into this country and disks like those at bar were here cut therefrom and then sold for filtering purposes. The Government's testimony, however, was to the effect that at and prior to the time of the passage of the tariff act there was a greater quantity of paper like that from which the disks at bar were cut imported into this country than disks, and that the chief use of paper identical with or similar to Exhibits 1 to 28 at that time was for a use other than for filtering coffee. One of the Government's witnesses, of vast experience in the importing, buying, and selling of paper, emphasized the use of paper similar to that from which the instant merchandise is cut for several different purposes. It was pointed out that the instant paper was made from a wild, strong fiber gathered in the country districts of Japan and pounded into a pulp which has a milky appearance; that frames are dipped into the vat and the adhering pulp is dried into sheets and that round wooden disks are laid on stacks of the paper and "they go around the disk and cut out the size" by hand. It was testified that the paper from which the imported merchandise was made was known as Mino bibulous, the term "Mino" coming from a country district in Japan.

One of the Government's witnesses emphasized that paper which he sells and which he says is similar and made in the same manner

and from the same material as is the paper from which the imported disks are made is sold by him principally for mimeograph backing sheets; that small sizes are sold to beauty parlors for face cleaning, and that large sizes are sold for lens cleaning.

Richard T. Stevens, Government witness, was asked the following questions and made the following answers:

R. D. Q. I take you back again to June 1930. Do you know and can you state whether at that time, immediately prior thereto and immediately subsequent thereto, that the chief use of paper identical or similar to Exhibits 1 to 28 was for the purpose of use in the filtering of coffee or was for some other purpose?—A. My opinion is it was for some other purpose.

R. D. Q. And your opinion is based upon your experience importing both disks and sheets and selling both disks and sheets?—A. Yes.

Without passing upon the probative value of the testimony introduced by the Government, it is proper to say that it certainly does not support the contentions of the importers. The proof offered by appellees for the reasons hereinbefore stated does not show that the merchandise represented by the five protests at bar should have been classified by the collector as filtering paper. It is not enough in order that an importer may have relief from a classification which he regards as improper that he show that the collector was wrong; he must establish that his claim is right. The latter the importers in the case at bar have failed to do, and under the circumstances, without expressing any view as to the proper classification of the articles at bar and without approving the classification of the collector, we hold that the conclusion arrived at by the trial court is erroneous, and its judgment should be and it is *reversed*.